# 14-1386-cv

## United States Court of Appeals

### for the

## Second Circuit

❖◖●◗❖

E.H., individually and on behalf of M.K., a minor,

*Plaintiff-Appellant,*

– v. –

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF and SPECIAL APPENDIX FOR PLAINTIFF-APPELLANT

LAWRENCE D. WEINBERG, ESQ.
*Attorney for Plaintiff-Appellant*
162 Williamson Avenue
Bloomfield, New Jersey 07003
(973) 748-3761

# TABLE OF CONTENTS

Table of Contents ................................................................. i

Table of Authorities ............................................................ ii

Jurisdictional Statement ....................................................... 1

Statement of Issues Presented for Review ............................ 1

Statement of the Case, Facts, and Procedural History ........... 2

Summary of the Argument .................................................... 5

Argument .............................................................................. 7

Legal Framework ................................................................. 7

Point I    The District Court Did Not Accord the Proper Deference to the Impartial Hearing Officer and Instead Deferred to the State Review Officer When the Opinion Was Not Well Reasoned ........ 9

     A. Methodology ..................................................... 10

     B. Paraprofessional ................................................ 12

     C. Behaviors and FBA ........................................... 14

Point II    A School District Proposed Placement Under the IDEA Cannot be Found Appropriate When the Only Evidence Available Demonstrates that the Proposed Location Could Not Implement the Individualized Education Program ...................... 17

Point III    The IHO's Decision that The Rebecca School was Appropiateand that Equities Favored Reimbursement Should be Reinstated .................................................. 23

     A The IHO's Finding that the Rebecca School was Appropriate was Well Reasoned ................................................ 23

     B. The IHO's Decision that Equities Favored Reimbursement was Correct ........................................................ 27

Conclusion ........................................................................... 29

i

# TABLE OF AUTHORITIES

**Cases**

*A.E. ex rel. Mr. and Mrs. E. v. Westport Bd. Of Educ.*, 251 Fed.Appx. 685 (2d Cir. 2007) ................................................................................ 7

*Board of Educ. v. Rowley*, 458 U.S. 176 (1982).............................................. 7

*C.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68 (2d Cir. 2014)....................... 14

*F.L. v. N.Y. City Dep't of Educ.*, 553 Fed. Appx. 2 (2d Cir. 2014) .............. 14

*Florence County School Dist. Four v. Carter*, 510 U.S. 7 (1993) ................ 8

*Forest Grove School Dist. v. T.A.*, 557 U.S. 230  (2009).............................. 8

*Frank G. v. Bd. of Educ.*, 459 F.3d 356 (2d Cir. 2006), *cert. denied*, *Board of Educ. of Hyde Park Cent. School Dist. v. Frank G.*, 552 U.S. 985 (2007) ................................................................................... 7

*J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606 (S.D.N.Y. 2011) ........................................................................................ 8

*M.H. v. New York City Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012)..... 10, 12

*M.V. v. Shenendehowa Cent. Sch. Dist.*, 2008 U.S. Dist. LEXIS 182 (N.D.N.Y Jan. 2, 2008) ............................................................................ 21

*M.W. v. New York City Dep't of Educ.*, 725 F.3d 131 (2d Cir. 2013) .......... 14

*Muller v. Committee on Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95 (2d Cir. 1998)...................................................................... 17

*New Milford Bd. of Educ. v. C.R.*, 2010 U.S. Dist. LEXIS 61895 (D.N.J. June 21, 2010), *aff'd New Milford Bd. of Educ. v. C. R.*, 431 Fed. Appx. 157 (3d Cir 2011) ........................................................... 21

*O.O. ex rel. Pabo v. District of Columbia*, 573 F. Supp. 2d 41 (D.D.C. 2008)......................................................................................... 22

*R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. Sept. 20, 2012), *cert. denied*, 133 S. Ct. 2802 (2013) ........................................... 13, 14, 18

*Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985) ..... 3, 8, 17

*Schaffer v. Weast*, 546 U.S. 49 (2005) ............................................................. 8

*T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009),
   *cert. denied*, 560 U.S. 904 (2010) .................................. 18, 20, 22

*Ward v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*,
   2014 U.S. App. LEXIS 10052 (2d Cir. May 30, 2014) ............................ 1

*Wolfe v. Taconic-Hills Cent. Sch. Dist.*, 167 F. Supp. 2d 530
   (N.D.N.Y 2001) ......................................................................................... 21

## Statutes and Regulations

14 NYCRR § 512.4 ........................................................................................... 26

14 NYCRR § 589.4 ........................................................................................... 26

20 U.S.C. § 1400 ................................................................................................. 7

20 U.S.C. § 1401 ........................................................................... 1, 7, 17, 18

20 U.S.C. § 1415 ........................................................................................... 1, 4

28 U.S.C. § 1291 ................................................................................................. 1

28 U.S.C. § 1331 ................................................................................................. 1

34 C.F.R. § 300.101 ........................................................................................... 18

34 C.F.R. § 300.324 ........................................................................................... 14

34 C.F.R. §323 ................................................................................................... 18

8 NYCRR § 200.1 .............................................................................................. 14

8 NYCRR § 200.22 ............................................................................................ 14

8 NYCRR § 200.4 .............................................................................................. 14

8 NYCRR § 79-11.6 ........................................................................................... 26

NY CLS Educ § 8404 ........................................................................................ 26

NY Educ. Law § 4404 ......................................................................................... 8

## Other Authorities

N.Y. Laws 2007, c. 583 ....................................................................................... 8

# JURISDICTIONAL STATEMENT

This action is brought pursuant to the Individuals with Disabilities Education Improvement Act (formerly the Individuals with Disabilities Education Act), 20 U.S.C. § 1401, *et seq.* (hereafter the "IDEA"), which ensures a learning-disabled child's right to a free appropriate public education. Jurisdiction of the U.S. District Court of the Southern District of New York was invoked under 20 U.S.C. § 1415(i)(2) providing for jurisdiction and a right of action for a party "aggrieved by the findings and decision" of an impartial due process hearing. Jurisdiction was also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

Jurisdiction in the Second Circuit arises under 28 U.S.C. § 1291, as appellants appeal a final decision from the Southern District of New York (S.D.N.Y). Joint Appendix, p. (hereinafter "JA") JA 108-20.

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

Issue I: Did the District Court accord the proper deference to the State Review Officer rather than the Impartial Hearing Officer?

Standard of Review: *de novo*. *Ward v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, 2014 U.S. App. LEXIS 10052 (2d Cir. May 30, 2014)

1

Issue II: Can a school district proposed placement under the Individuals with Disabilities Education Improvement Act be found appropriate when the only evidence available demonstrates that the proposed location could not implement the Individualized Education Program?

Standard of Review: *de novo*. *Id.*

## STATEMENT OF THE CASE, FACTS, AND PROCEDURAL HISTORY

Appellant E.H. (hereinafter "parent") is the parent of a learning-disabled child M.K. (hereinafter the "child"). Parent and child live in the school district operated by the appellee, the New York City Department of Education ("DOE"). The DOE acknowledged that the child is learning-disabled and entitled to a free appropriate public education. Confidential Appendix p. (hereinafter "CA") 194-211.

The child has autism and is severely impaired. CA 194-211, CA 267-280. The child attended the Rebecca School during the 2010-2011 school year and the parent successfully sued the DOE for tuition reimbursement and direct payment of tuition. CA 226-42. This appeal relates to the child's education program during the 2011-2012 school year. On February 14, 2011, pursuant to the IDEA, a DOE committee on special education met and generated an Individualized Education Plan ("IEP") for the child (the

2

"February 14, 2011 IEP") for the 2011-2012 school year. CA 192-211. The February 14, 2011 IEP was based in large part on a December 2010 progress report prepared by the Rebecca School. CA 109, 119; compare CA 192-211 with CA 254-66. Specifically, the DOE psychologist, who chaired the February 14, 2011 IEP meeting testified that she utilized the December 2010 progress report goals and then "some of the words changed slightly." CA 119. The February 14, 2011 IEP recommended a 6:1:1 classroom (six students, one teacher, one paraprofessional) for the child, a crisis management paraprofessional, and related services. CA 194-211.

Subsequently, the DOE offered the child a placement at P176X at P153X ("P176X"). CA 215. Parents have always contended that either the February 14, 2011 IEP or the proposed district placement were not appropriate for the child. At an impartial hearing, a witness testified that the class to which the DOE would have assigned the child had six students and thus did not have a space for the child. CA 135, 142.

The parents sent the child to the Rebecca School for the 2011-2012 school year and sought reimbursement from the DOE for Rebecca School tuition under *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985). Under *Burlington* a parent may be reimbursed for tuition if (1) the district-provided services made available pursuant to an Individualized

3

Education Program (IEP) are inadequate; (2) the private education services obtained by the parent are appropriate; and (3) equitable considerations favor repayment.

Pursuant to 20 U.S.C. § 1415(f) and 8 N.Y.C.R.R. § 200.5(i), on June 27, 2011, parents initiated an administrative due process proceeding against the DOE, in order to secure reimbursement and other relief pursuant to the IDEA. CA 221-25. An impartial hearing took place over four days and an Impartial Hearing Officer Issued a decision on February 28, 2012 (the "IHO decision"). The IHO Decision found that the February 14, 2011 IEP and placement location at P176X were procedurally and substantively inappropriate. CA CS35-55. The DOE appealed the IHO decision to New York State's second administrative review tier, the State Review Officer of the New York State Education Department (hereinafter "SRO"). CA 56-77. The SRO issued a decision on July 25, 2012 (hereinafter the "SRO Decision"). CA9-27. The SRO Decision ruled in favor of the DOE and found that the child was provided with a free appropriate public education. *Id.* Parents appealed to S.D.N.Y. JA 5-28. On March 21, 2014, Judge George B. Daniels affirmed the decision of the SRO. JA 108-120. Parents filed their notice of appeal on April 25, 2014. JA 122-23.

## SUMMARY OF THE ARGUMENT

The IHO found four denials of a free appropriate public education: 1. The IEP was deficient because the IEP adopted the Rebecca School goals, but not the Rebecca School methodology. 2. It was not appropriate for the IEP to delegate the implementation of goals to a 1:1 crisis management paraprofessional. 3. The IEP did not include a functional behavioral assessment ["FBA"], which was needed to determine the nature and severity of the child's behaviors, which resulted in the behavior intervention plan on the IEP being insufficient because it did "not accurately list his interfering behaviors, and did not provide for a complete list of strategies and supports." 4. There was "no appropriate recommended placement" because there was never space available for the child at P176X. CA 50-51.

The first two issues, methodology and delegation of the goals, the SRO failed to address. The third issue, whether the IEP addressed the child's behaviors, the SRO examined, but ignored critical evidence, specifically the testimony of the child's classroom teacher, Ms. Mucherino. Finally, the SRO misstated the record and dismissed the IHO's finding that there was no placement for the child at the recommended placement. CA 9-27. Instead of addressing the findings of the IHO, the SRO did a long analysis of the evaluative information, present levels of performance and the IEP goals.

5

However, the IHO did not make findings on either of these issues, other than the behaior intervention plan. Compare CA 16-26 with CA 50-51. Because the SRO failed to address the IHO's decision, the SRO Decision cannot be considered reasoned or supported by the evidence. The court should have deferred to the IHO, but instead deferred to the poorly reasoned decision of the SRO.

Next, the court misstated the record when it found that there was at one point a placement for the child at P176X. The IHO found as a matter of credibility that there never was a seat available for the child at P176X: "I do not credit the uncorroborated statement of the teacher that the school staff 'thought' one of the students enrolled in the class from September 2010 to June 2011, would not return to the class on July 1, 2011." CA 50-51. The IHO's finding of credibility was supported by the evidence. Because the IHO's decision that the program was not appropriate was entitled to deference and because the placement did not have a seat for the child, the court should have ruled in the parent's favor and found that the child was denied a free appropriate public education.

## ARGUMENT

## LEGAL FRAMEWORK

The IDEA is designed to ensure that all children with disabilities are provided with a free appropriate public education. 20 U.S.C. § 1400(d)(1)(A); see 20 U.S.C. § 1412(a)(1)(A). Pursuant to the IDEA, a school district must provide each disabled child with "special education and related services," 20 U.S.C. § 1401 (9), that are "reasonably calculated to enable the child to receive educational benefits," *Board of Educ. v. Rowley*, 458 U.S. 176, 207 (1982). A free appropriate public education "must include special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006), *cert. denied*, *Board of Educ. of Hyde Park Cent. School Dist. v. Frank G.*, 552 U.S. 985 (2007); *A.E. ex rel. Mr. and Mrs. E. v. Westport Bd. Of Educ.*, 251 Fed.Appx. 685, 687 (2d Cir. 2007).

When a school district fails to provide a disabled child with a free appropriate public education, parents who unilaterally place their special needs child in a private school may be reimbursed for tuition if three requirements are met: (1) the district-provided services are inadequate; (2) the private education services obtained by the parent are appropriate; and (3)

equitable considerations favor repayment. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985). When the three *Burlington* prongs are satisfied, parents who have unilaterally placed their child in a private school may obtain reimbursement for the cost of the private school tuition even when the school chosen by the parent does not meet the definition of a free appropriate public education. *Florence County School Dist. Four v. Carter*, 510 U.S. 7, 13 (1993). This remedy is also available to parents regardless of whether the child previously received special-education services through the public school. *Forest Grove School Dist. v. T.A.*, 557 U.S. 230  (2009).

In a *Burlington / Carter*, IDEA case in New York State, the school district has the burden of proof that it provided the child with a free and appropriate public education and that equitable factors do not favor repayment. NY Educ. Law § 4404(1)(c). Parents have the burden of proof that the chosen school is appropriate. *Id.*; *Schaffer v. Weast*, 546 U.S. 49 (2005). NY Educ. Law § 4404(1)(c) was amended on October 14, 2007 to place the burden of proof on school districts in IDEA cases. N.Y. Laws 2007, c. 583; see *J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 641 FN 29 (S.D.N.Y. 2011). This change was done in response to *Schaffer* to restore prior New York State policy.

8

## POINT I: THE DISTRICT COURT DID NOT ACCORD THE PROPER DEFERENCE TO THE IMPARTIAL HEARING OFFICER AND INSTEAD DEFERRED TO THE STATE REVIEW OFFICER WHEN THE OPINION WAS NOT WELL REASONED

The impartial hearing officer found 1. The IEP was deficient because the IEP adopted the Rebecca School goals, but not the Rebecca School methodology, floortime. 2. It was not appropriate to delegate the implementation of goals to a 1:1 crisis management paraprofessional. 3. The IEP did not have a functional behavioral assessment, which was needed to determine the nature and severity of the child's behaviors, which resulted in the behavior intervention plan on the IEP being insufficient because it did "not accurately list his interfering behaviors, and did not provide for a complete list of strategies and supports." 4. There was "no appropriate recommended placement" because there was never space available for the child at P176X. CA 50-51. Although the IHO made four findings on a denial of a free appropriate public education, the SRO found that there were only three. The SRO spent considerable time addressing the adequacy of evaluative information and present levels of performance and the IEP goals, however, the SRO dismissed other findings by the IHO in a footnote or failed to address them at all. Compare CA 16-26 with CA 15-16. The lower court deferred to the conclusory findings of the SRO even though these findings were not well reasoned. JA 118-19.

9

An SRO's decision is not entitled to deference when the SRO refuses to address substantive issues addressed by the IHO or refuses to take into account evidence examined by the IHO. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012). Because the IHO addressed issues that the SRO failed to even consider, the IHO's decision was more carefully reasoned and the court should have accorded it deference. *Id.* Here the SRO failed to address the IHO's finding that the IEP was not appropriate because it utilized the Rebecca School goals without its methodology, the IEP was not appropriate due to assigning goals to an untrained 1:1 crisis paraprofessional, and because the SRO failed to consider evidence that the behavioral interventions were not appropriate due to lack of a functional behavioral assessment. The availability of a seat at P176X is addressed in Point II.

### A. Methodology

The SRO incorrectly found that the IHO improperly addressed issues that were not in the hearing request. The SRO did not provide a reason for failing to address the issue of methodology. The issue of methodology was clearly pled. *See* CA 222-23 ("The program does not offer the methodology that [the child] needs to make academic and social/emotional progress."). The issue of the goals was clearly pled. CA 222-23 ("The goals and

objectives on the IEP do not reflect all of the [the child]'s educational, social and emotional needs.").

The SRO made no finding on this issue other than stating in a footnote, "I note that the issue of whether the goals contained in the February 2011 IEP could be implemented in the district's recommended placement (Tr. pp. 68- 72) [CA 118-19] was first raised by counsel for the parent on cross examination of district witnesses." CA 16. This finding was inexplicable since the SRO acknowledged that the issue of methodology and goals were pled in the due process complaint. CA 12. Moreover, the IHO's finding was not that the IEP could not be implemented in the specific school location of P176X. His finding was that the Rebecca School goals "could not be effectively implemented in the recommended program." CA 50. As such the issue was clearly pled by the parent and addressed by the IHO. The IHO addressed whether the goals could be addressed in the program and the SRO rejected, without analysis, whether the goals could be addressed in the placement. As such the SRO was not entitled to deference.

Moreover, although the SRO spent considerable effort examining the goals and determining that they were appropriate, that was not the issue that the IHO addressed. The question was not whether the goals were appropriate. The goals were written by the Rebecca School and adopted

11

nearly word for word by the CSE. Compare CA 198-207 with CA 263-65. The problem wasn't the goals themselves. The problem that the IHO addressed was whether the goals could be implemented in a DOE program without the methodology. The IHO held that adopting the goals in the program without the methodology was not appropriate. CA 50. Because the SRO did not address this issue, the IHO was entitled to deference. *M.H.,* 685 F.3d at 246.

The lower court found that "the adoption of the Rebecca School floortime methodology in the IEP did not violate the procedural requirements of the Act." JA 117. However, the IHO's finding and parent's argument was that the IEP was substantively deficient due to the failure to include the methodology, not that it was procedurally deficient. Because the IHO addressed the issue of methodology and because it was pled, the SRO was wrong not to consider whether the IEP was inappropriate for failure to include the floortime methodology. Therefore, the SRO was not entitled to deference and the court should have ruled in favor of the parent on the issue.

### B. Paraprofessional

The SRO did not address the 1:1 crisis paraprofessional other than noting a paraprofessional was on the IEP. CA 11, 22. The IHO held that delegating goals to the 1:1 crisis management paraprofessional was not

appropriate: "I find that there is nothing in the record to indicate that a 1:1 crisis management para will have sufficient training to implement IEP goals, as directed by the IEP." CA 50.

The lower court found that the argument about the paraprofessional was without merit.

> Moreover, Plaintiff's argument that the classroom paraprofessional lacked training to implement the Student's IEP goals is contradicted by the evidence on the record that the Student's IEP could have been implemented at P176X. Specifically, a DOE teacher at P176X, who would have been the Student's teacher had he enrolled there, testified about how she would have implemented the goals outlined in the IEP.

However, in making this finding the court relied on retrospective evidence that materially changed the IEP. This is not allowed. *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 174 (2d Cir. Sept. 20, 2012), *cert. denied*, 133 S. Ct. 2802 (2013). The IEP specifically states that the crisis management paraprofessional will implement three of the goals. CA 206-07. As such, the court was wrong to consider the testimony by the proposed teacher that she, not the paraprofessional would implement the goals. *Id.*

Because the IHO found that the use of a paraprofessional to implement goals was not appropriate and the SRO failed to address the issue at all, the IHO's decision was entitled to deference. The court was wrong to utilize retrospective evidence to cure this defect in the IEP.

13

### C. Behaviors and FBA

The court gave the SRO deference regarding the child's behaviors even though the findings were contrary to the evidence. There was overwhelming evidence that the child has significant behavioral problems that were not addressed in the IEP.

A functional behavioral assessment is a procedural requirement under the IDEA and New York State law. *C.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68 (2d Cir. 2014); 34 C.F.R. § 300.324; 8 NYCRR § 200.1(r), 200.4(b)(1)(v), 200.22(a). The omission of an FBA requires the court to take particular care to ensure that the IEP adequately addresses the child's problem behaviors. *C.F.*, 746 F.3d 68; *M.W. v. New York City Dep't of Educ.*, 725 F.3d 131 (2d Cir. 2013). The failure to conduct an FBA is a "serious procedural violation," which results in a denial of a free and appropriate public education if the IEP does not adequately identify the problem behavior and prescribes ways to manage it. *F.L. v. N.Y. City Dep't of Educ.*, 553 Fed. Appx. 2, 6 (2d Cir. 2014); *R.E.*, 694 F.3d at 190.

The behavior intervention plan ("BIP") on the child's IEP describes the behaviors that interfere with learning is follows "When dysregulated, [the child] may vocalize loudly, bang or throw toys, climb onto furniture, and scratch and spit at others." CA 211. This statement was incorrect. The

child's teacher at the Rebecca School during the 2010-2011 and 2011-2012 school years, testified that the child's spitting should not be characterized similarly to his aggressive behaviors. CA 166. Spitting is not a function of the child's frustration. CA 166. Spitting is an attempt to initiate with others. CA 165, 168. The child's demeanor is different when spitting than when he is dysregulated. CA 168. The next statement on the BIP is "[The child] requires adult support to attend to non-preferred activities." CA 211. This is not a behavior. This is a support. Furthermore, despite the fact that the behavior intervention plan notes that the child's behaviors have two functions, "difficulty communicating" and "expression of frustration" none of the behavior changes or strategies help the child to communicate. CA 211. Lastly, the supports to be employed on the BIP are merely the teacher and service providers. This is not a true list of supports, which should be things the teachers do to support.

Furthermore, the BIP does not state that the child bites. CA 211. The December 2010 progress report was utilized by the DOE at the February 14, 2011 CSE Meeting. CA 109. This report states, "When dysregulated, [the child] may vocalize loudly, bang or throw toys, climb onto furniture, and act out towards staff by biting, scratching, or spitting." CA 254. Ms. Mucherino testified that he still bites. CA 162, 164, 168-69. Tr. While the CSE minutes

reflect a handwritten notation, "Teacher "not biting anymore. Aggressive behavior decreased." There was no testimony about who wrote this or why. CA 213. The lower court relied on the minutes even though they were inaccurate. JA 119.

The CSE did not conduct a functional behavioral assessment, but rather had an informal discussion of the child's behaviors at the meeting. CA 118. NY State Law defines a functional behavioral assessment. 8 NYCRR 200.1(r); 8 NYCRR 200.22(a); 8 NYCRR 201.2(h). By statute the informal discussion led by the DOE is not a functional behavioral assessment. No data was utilized at the meeting. CA 118. No related service providers were contacted when preparing the FBA. CA 118. Here there were two critical mistakes on the BIP regarding biting and spitting, thus the absence of the FBA resulted in a denial of a free appropriate public education.

For all of the foregoing reasons, the court incorrectly deferred to the SRO rather than giving deference to the IHO. Specifically, the IHO's finding that the goals were not appropriate due to the failure to include the floortime methodology was entitled to deference because the SRO failed to address the issue. The IHO's findings that it was inappropriate to delegate goals on the IEP to the crisis paraprofessional was entitled to deference because the SRO failed to address the issue. Finally, the SRO's decision on the

appropriateness of the behavior intervention plan and lack of a functional

behavioral assessment is not entitled to deference because it was not

supported by the evidence. Therefore, the decision of the IHO that the child

was not provided with a free appropriate public education should be

reinstated.

### POINT II A SCHOOL DISTRICT PROPOSED PLACEMENT UNDER THE IDEA CANNOT BE FOUND APPROPRIATE WHEN THE ONLY EVIDENCE AVAILABLE DEMONSTRATES THAT THE PROPOSED LOCATION COULD NOT IMPLEMENT THE INDIVIDUALIZED EDUCATION PROGRAM

Federal law defines an IEP as "a written statement for each child with

a disability that is developed, reviewed, and revised in accordance with" 20

U.S.C. § 1414(d). 20 U.S.C. § 1401 (14); see also 20 U.S.C. § 1412 (a)(4).

The IDEA requires not just an adequate written IEP program, but also an

adequate program implemented in practice. See *Muller v. Committee on*

*Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95, 105 (2d Cir.

1998) (when determining whether to grant parents relief under the IDEA,

district courts should consider "whether the school district's placement

pursuant to its IEP is inappropriate" (citing *School Comm. of Town of*

*Burlington v. Department of Educ.*, 471 U.S. 359, 369 (1985).

An IEP by design is only a document and it must be **implemented in**

**a classroom** to provide a special needs child with a free appropriate public

education. See 20 U.S.C. § 1401 (9)(D) (a free appropriate public education means special education and related services that are provided in conformity with the IEP); 20 U.S.C. § 1412 (a)(22)(B) (noting the states duty to ensure that appropriate IEPs are developed and implemented); 34 C.F.R. § 300.101(b)(ii) (noting that an IEP must be "in effect" to provide a free appropriate public education); 34 C.F.R. §323 (noting that an IEP must be "in effect" at the beginning of the school year).

An IEP cannot be in effect or implemented without a physical school and classroom location. Most importantly the IDEA requires not only that the IEP be appropriate, but also that the special education and related services are provided "in conformity with" the IEP. This court has stated that a school district cannot assign a child to a classroom or location that cannot implement the IEP. *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009), *cert. denied*, 560 U.S. 904 (2010) ("We emphasize that we are not holding that school districts have carte blanche to assign a child to a school that cannot satisfy the IEP's requirements."); *R.E.*, 694 F.3d at 191-192 ("The Department may select the specific school without the advice of the parents so long as it conforms to the program offered in the IEP."). While the parents in *T.Y.* made a procedural attack on the assignment of the

placement, parents here make a substantive attack on the placement. The

P176X placement could not implement the IEP.

The lower court's finding on this issue is factually incorrect and

against the weight of the evidence:

> Plaintiff's argument that the Student was denied a FAPE
> because the classroom did not have a space for him is similarly
> without merit. Plaintiff declined the DOE's offered placement
> prior to the start of the school year. The school was not
> obligated to hold the placement open after Plaintiff did so.
> Furthermore, the evidence in the record shows that a seat was
> available for the Student at the time Plaintiff filed the DPC. JA
> 119.

The due process complaint was filed on June 27, 2011. CA 221-25.

There is no evidence in the record that a seat was available at P176X at that

time. Moreover, the parent never argued that the DOE had to save a space

for the child at P176X. The record was clear that **there never was a space**

**for the child at P176X**. At best, ignoring the finding of credibility by the

IHO, the district "thought" there would be a space. But there never was a

space for the child. The proposed classroom in 2011-2012 had the same six

children as 2010-2011. CA 135, 142. However, the IHO found that he did

not find credible the testimony that the district "thought" that one of the six

children would not return in July 2011. CA 50-51. As such the IHO found

that no only was there never a space, the district knew there never was a

space and tried to cover it up.

19

This court has held that a school district cannot assign a child to a classroom or school location that cannot implement the IEP. *T.Y.*, 584 F.3d at 420. In this case, the child was placed by defendant in a classroom at P176X. That classroom had no space for the child.

First, it was undisputed that there was no seat for the child as of the first day of class. Ms. Cortes, the classroom teacher at P176X, testified that there were six students in her classroom in July 2011, starting with the first day of class. "Q: [H]ow many students were in your class in July 2011? A. Six." CA 135. "Q. [W]as there room in your class beginning in July of 2011? A. No, there wasn't." CA 142.

Second, there was no spot for the child at the time the placement letter was sent. Ms. Cortes testified that as of June 13, 2011 it was her belief that there would be five students in her classroom for the 2011-2012 school year. CA 143. The IHO, however, did not find this testimony credible. "I do not credit the uncorroborated statement of the teacher that the school staff "thought" one of the students enrolled in the class from September, 2010, to June, 2011, would not return to the class on July 1, 2011." CA 50-51. The SRO did not address this finding.

An IHO's findings of credibility must stand unless clearly erroneous. *New Milford Bd. of Educ. v. C.R.*, 2010 U.S. Dist. LEXIS 61895, *10-12

(D.N.J. June 21, 2010), *aff'd New Milford Bd. of Educ. v. C. R.*, 431 Fed.
Appx. 157 (3d Cir 2011) (finding in an IDEA case that a "Court can only
disturb credibility determinations made after hearings in which live
testimony was offered if the non-testimonial extrinsic evidence in the record
would justify a contrary conclusion.") (citations omitted); *see United States
v. Joseph*, 462 Fed. Appx. 52, 55 (2d Cir. 2012) ("In making this finding, the
district court found the testimony of Taylor to be particularly credible. We
cannot say that this was clearly erroneous."); *M.V.*, 2008 U.S. Dist. LEXIS
182, (finding the credibility determinations and reasoning of the IHO more
reliable than those of the SRO); *Wolfe v. Taconic-Hills Cent. Sch. Dist.*, 167
F. Supp. 2d 530, 534 (N.D.N.Y. 2001); *c.f. United States v. Capers*, 627
F.3d 470, 486 (2d Cir. 2010) (credibility determinations are "never
appropriate for an appellate court to make.").

The IHO's finding was not erroneous because Ms. Cortes was not
credible on this issue. Most troubling about Ms. Cortes' testimony is that she
attempted to hide the fact that there were six students in her classroom.
DOE's counsel did not ask how many students were in her classroom in
July, although she asked how many adults were there. CA 126. Then when
asked how many students in her class were verbal and non verbal, Ms.
Cortes tried to hide the fact that her classroom had six students. CA 128. "I

had three students in the class that were non-verbal, and three students--or two students in the class that were verbal." CA 128. Ms. Cortes started to tell the truth about the number of verbal students in her class, but then caught herself and then changed her testimony.

A school district cannot assign a child to a school that cannot satisfy the IEP. *T.Y.*, 584 F.3d at 420. That is exactly what happened here. The DOE assigned the child to a classroom and a school that could not implement his IEP because it did not have a seat; this was illegal under the IDEA. *O.O.* 573 F. Supp. 2d at 53 (A district "must also implement the IEP, which includes offering placement in a school that can fulfill the requirements set forth in the IEP.") Defendant placed the child in a classroom with six students without a spot for him. This was an error under the IDEA and denied the child a FAPE.

When asked what would have happened if the child had attended P176X, Ms. Cortes could not answer and said that "The administrators would have made the call." CA 142. The DOE failed to call an administrator to testify as to what would have happened had the child attended P176X. Thus, the only evidence is that there was no space in the only classroom available. Because the IHO did not find credible the testimony that the DOE

22

thought a space was available, there is no evidence that there ever was a space at P176X for the child.

Because the P176X placement could not have implemented the IEP it was not appropriate and the DOE failed to offer the child a free appropriate public education.

## POINT III THE IHO'S DECISION THAT THE REBECCA SCHOOL WAS APPROPIATE AND THAT EQUITIES FAVORED REIMBURSEMENT SHOULD BE REINSTATED

### A The IHO's Finding that the Rebecca School was Appropriate was Well Reasoned

In order to obtain tuition payment under *Burlington*, parents must demonstrate the appropriateness of the private school where they placed their child. An appropriate school is one that is likely to produce progress, not regression. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007). The parental right of unilateral withdrawal cannot be eliminated by a district requirement that limits parental choice to inappropriate services. A private school chosen by the parents does not need to meet the IDEA definition of a FAPE or provide an IEP for the disabled student. *Frank G.*, 459 F.3d at 363-64.

Courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. *Frank G.*, 459 F.3d at 364. To

qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. The private school need not meet the IDEA definition of a FAPE, formulate an IEP for the student, or provide the student with teachers certified in special education. *Frank G.*, 459 F.3d at 364 Parents need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction. *Gagliardo*, 489 F.3d at 112; *Frank G.*, 459 F.3d at 364-65.

> The IHO found the Rebecca School appropriate.

> The Rebecca School offers a supportive, small class environment with intensive instruction and supports and the individual and small group attention, which [the child] requires to make progress. There is a low student-teacher ratio, and the other students in [the child]'s class are of similar age and functioning levels, and have similar needs. [the child] receives the structure, individual and small-group attention, sensory interventions, learning strategies, and behavioral interventions he requires to remain regulated and able to learn. Related services are fully integrated into the classroom and curriculum. The staff regularly monitors students' progress and modifies their programs to suit their developing needs. The program addresses [the child]'s particular cognitive, communication, regulation, behavioral, and social issues. The Rebecca School offers parent training, consultation, and counseling, so that [the child]'s parent can carryover program goals into the home. The record indicates that [the child] has made some progress at RS. The RS program seems reasonably calculated to ensure that [the child] benefits educationally and makes academic, social and behavioral progress; it provides an education in substantial

compliance with all the substantive requirements of IDEA. CA
51.

The decision was well reasoned and supported by the evidence. JA 65-70.

In the court below, the DOE argued that the Rebecca School was
inappropriate for two reasons: 1. The precise related services mandate on the
IEP was not being implemented at the Rebecca School. 2. The Rebecca
School was not providing the child with "structure."

The child's IEP mandate was four occupational therapy ("OT")
sessions per week individually (1:1), and one session per week in a dyad
(2:1). CA 210. At the Rebecca School the child was seen two times a week
individually, one time a week in the classroom in a group by his
occupational therapist, Toni Sheridan, at the Rebecca School. CA 167. The
child's prior IEP recommended four OT sessions. CA 210 (noting that one
occupational therapy session was initiated.) An additional fifth occupational
therapy session was added by the CSE despite the fact that the child was
receiving three occupational therapy sessions at the time, as reflected on the
December 2010 progress report. CA 259. No reason for this change was
offered. The three occupational therapy sessions continued at the Rebecca
School for the rest of the 2010-2011 school year and is reflected on the May
2011 progress report. CA 284. In addition to the scheduled OT, Ms.
Sheridan sees the child "in various other groups throughout the week in the

25

classroom and during movement groups and cool down groups." CA 167.
The child has a difficult time with transitions, so additional OT sessions
would have additional transitions. CA 169. Pushing into the classroom more
for OT groups allows him to get an appropriate amount of OT with fewer
transitions." CA 169. Lastly, Ms. Sheridan testified that the child's OT needs
were met with "constant consultation in the classroom." CA 169.

The child received music therapy instead of counseling. CA 159.
Music therapy is defined as creative arts therapy by New York State law. 8
NYCRR § 79-11.6(b)(1)(iv); see also 14 NYCRR § 512.4(z)(1); 14 NYCRR
§ 587.4(d)(2)(ii); 14 NYCRR § 589.4(c)(2). Creative arts therapy is defined
by New York law as "(a) the assessment, evaluation, and the therapeutic
intervention and treatment, which may be either primary, parallel or
adjunctive, of mental, emotional, developmental and behavioral disorders
through the use of the arts as approved by the department; and (b) the use of
assessment instruments and mental health counseling and psychotherapy to
identify, evaluate and treat dysfunctions and disorders for purposes of
providing appropriate creative arts therapy services." NY CLS Educ § 8404.
As such the replacement of counseling with music therapy was not a reason
to find the Rebecca School inappropriate.

Parents "need not show that a private placement furnishes every special service necessary to maximize their child's potential." *Frank G.*, 459 F.3d at 364-65; *M.H.*, 712 F. Supp. 2d at 166. In *M.H.* the court found a school appropriate that didn't offer any related services.

Regarding structure, defendant took the word structure out of context. The Marx report states, "[I]t is essential that the classroom routine be structured, with praise meted out as deserved, for effort and compliance with established behavioral expectations." Pl. CA 276. Clearly the report described **how** the class be structured, *i.e.*, with praise for effort and compliance with behavioral expectation. The report was not stating that the class had to **be** regimentally structured. Moreover, regardless of the testimony of Ms. Fochetta, the child has been able to make progress at the Rebecca School using the floortime format there. As such any absence of structure, if true, has not prevented the child from benefiting from the program there.

For all of the foregoing reasons the IHO's decision that the Rebecca School was appropriate should be reinstated.

### B. The IHO's Decision that Equities Favored Reimbursement was Correct

The third prong of the *Burlington*/*Carter* test examines whether it is equitable to order tuition reimbursement. Courts fashioning discretionary

equitable relief under IDEA must consider all relevant factors and have

broad discretion when doing so. *Carter*, 510 U.S. at 16; citing, *Burlington*,

471 U.S., at 369. "The district court enjoys broad discretion in considering

equitable factors relevant to fashioning relief." *Gagliardo*, 489 F.3d at 112

(citation omitted)

The DOE's IEP witness, testified, "The parent was very cooperative at

the meeting…" CA 115. The parent wrote the requisite letters. CA 243-46.

There was nothing in the record to suggest that the parent failed to cooperate

in any way or that equities did not favor reimbursement. The IHO decision

found that equities supported reimbursement because the "parent cooperated

and communicated with the CSE, made a timely hearing request, and the

amount of reimbursement is reasonable." CA 51-52. That determination was

supported by the record and should be reinstated.

## **CONCLUSION**

Wherefore, parents ask that this court reverse the March 21, 2014 decision by the lower court, hold that the DOE did not provide the child with a free appropriate public education for the 2011-2012 school year and reinstate the IHO's finding that the Rebecca School was appropriate for the child and that equities support reimbursement. Therefore, the February 28, 2012 IHO Decision should be reinstated in its entirety.

Respectfully submitted,

_____/s_____
LAWRENCE D. WEINBERG
lweinberg4398
Attorney for Appellants
162 Williamson Avenue
Bloomfield, New Jersey 07003
(973) 748-3761
lawrenceweinberg@gmail.com

Date: August 18, 2014

**SPECIAL APPENDIX**

**i**

# Table of Contents

**Page**

Memorandum Decision and Order of the Honorable George
    B. Daniels, Dated March 21, 2014, Appealed From ............ SPA-1

Judgment Appealed From, Dated March 25, 2014 ................. SPA-14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                              :
E.H., individually and on behalf of M.K.,                     :
                                                              :
                               Plaintiff,                     :   MEMORANDUM
                                                              :   DECISION AND ORDER
                                                              :
                  v.                                          :   12-CV-6639 (GBD)
                                                              :
NEW YORK CITY DEPARTMENT OF                                   :
EDUCATION,                                                    :
                                                              :
                               Defendant.                     :
                                                              :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GEORGE B. DANIELS, District Judge:

      Parent E.H. ("Plaintiff") commenced this action to seek a reversal of the New York State

Department of Education's State Review Officer's ("SRO") decision, pursuant to the Individuals with

Disabilities Education Improvement Act ("IDEA") 20 U.S.C. § 1400, et seq., that Plaintiff's son (the

"Student") was not entitled to tuition funding for a private school because the New York City

Department of Education ("DOE" or the "Defendant") offered a free appropriate public education

("FAPE") for the 2011-2012 school year.  In so deciding, the SRO reversed the Impartial Hearing

Officer (the "IHO")'s decision that Defendant failed to offer a FAPE to the Student and that Plaintiff

was entitled to a reimbursement of tuition costs at a private school.

      Defendant moved for summary judgment that Plaintiff is not entitled to reimbursement of private

school tuition costs for the Student (ECF 12).  Plaintiff cross-moved for summary judgment awarding

reimbursement (ECF 17).  Defendant's motion for summary judgment is GRANTED.  Plaintiff's cross-

motion for summary judgment is DENIED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILE MAR 21 2014

1

## I.    BACKGROUND

### A.    M.K.'s Early Childhood Classification as Learning Disabled

Plaintiff's son, M.K., is a child with a disability as defined under IDEA. (Def.'s Statement Pursuant to Local Rule 56.1 (Def.'s 56.1 Stmt.) ¶ 2; Pl.'s Local Civil Rule 56.1 Statement of Material Facts not in Dispute ("Pl.'s 56.1 Stmt.") ¶ 1.)  Specifically, M.K. has autism and displays language delays, attention deficits, and behavioral and adaptive skill deficiencies. (Def.'s 56.1 Stmt. ¶ 3.)  The DOE  is responsible for providing a FAPE to New York City children with disabilities. (Def.'s 56.1 Stmt. ¶ 4; Pl.'s 56.1 Stmt. ¶ 2.)  M.K. has attended the Rebecca School, a private school that specializes in education for autistic children, since September 2009. (Def.'s 56.1 Stmt. ¶¶ 5, 29.)

### B.    Evaluation of M.K. during the 2010-2011 School Year

On February 14, 2011, pursuant to the IDEA, a Committee on Special Education ("CSE") met and developed an Individualized Education Program ("IEP") for M.K. with an initiation date of July 1, 2011. (Def.'s 56.1 Stmt. ¶ 6-7; Pl.'s 56.1 Stmt. ¶¶ 3, 12-13.)  The CSE included a district representative and special education teacher; a school psychologist; Plaintiff; a parent member of the CSE; a social worker at the Rebecca School; the Student's teacher at the Rebecca School for the 2010-2011 school year; and a representative from Plaintiff's counsel's office. (Def.'s 56.1 Stmt. ¶ 8; Pl.'s Response to Def's 56.1 Stmt. ¶ 8.).  The CSE considered several documents, including M.K.'s prior IEP, a classroom observation of M.K. conducted on November 8, 2010, a Neuropsychological Evaluation dated July 9, 2009, and progress reports from the Rebecca School dated December 2010. (Def.'s 56.1 Stmt. ¶ 10.)  The Rebecca School utilizes a "DIR Floortime" methodology, which "focuses on what is motivating to the individual child," and, *inter alia*, group activities, occupational therapy, and speech therapy,  to implement M.K.s goals. (Pl.'s 56.1 Stmt. ¶ 23.)

2

The CSE also considered M.K.'s behavioral functioning and needs, and conducted an informal Functional Behavior Assessment ("FBA") (Def.'s 56.1 Stmt. ¶ 11; Pl.'s 56.1 Stmt. ¶ 15). The CSE then developed a Behavioral Intervention Plan ("BIP"). (Def.'s 56.1 Stmt. ¶ 11.)

The CSE recommended a twelve-month, extended school year in a special class in a specialized school with a 6:1:1 classroom ratio, speech and language therapy (one-to-one for thirty minutes, four times per week), occupational therapy (one-to-one for thirty minutes, four times per week, and two-to-one for thirty minutes once per week), individual counseling (for thirty minutes per week), and a one-to-one crisis management paraprofessional. (Def.'s 56.1 Stmt. ¶¶ 12-13.) The IEP also consisted of goals to improve M.K.'s behavioral challenges, as well as academic goals to improve M.K.'s reading, math, sensory information, motor planning, sequencing skills, visual-spatial skills, engagement, pragmatic language skills, receptive language skills, expressive language skills, oral motor skills, regulation, communication, interactions with peers and daily living skills. (Def.'s 56.1 Stmt. ¶¶ 15-16.) E.H. and M.K.'s teacher at the Rebecca school reviewed and modified these goals, and in response, the CSE added a goal to address "Activities of Daily Living." (Def.'s 56.1 Stmt. ¶¶ 18-19.)

On June 13, 2011 in a Final Notice of Recommendation ("FNR"), the Department of Education offered M.K. a 2011-2012 placement in a 6:1:1 class at specialized school P176X@P153X. (Def.'s 56.1 Stmt. ¶ 20). On June 7, 2011, prior to receiving the FNR, Plaintiff enrolled the Student at the Rebecca School. (Def.'s 56.1 Stmt. ¶ 29). On June 27, 2011, Plaintiff notified the CSE that the Student would attend the Rebecca School for the 2011-2012 school year. (Def.'s 56.1 Stmt. ¶ 30). The special education teacher at P176X that would have taught the Student testified that her class would have been an appropriate placement for M.K. and that she would have implemented his academic and social emotional goals, and that the school would provide related services. (Def.'s 56.1 Stmt. ¶¶ 22-28.)

3

**C.**   **The Due Process Complaint and Administrative Review of the IEP and the Private Placement**

On June 27, 2011, Plaintiff filed a Due Process Complaint (the "DPC") requesting an impartial hearing for the DOE to fund M.K.'s tuition at the Rebecca School (Def.'s 56.1 Stmt. ¶ 35; Pl.'s 56.1 Stmt. ¶¶ 5, 31). Plaintiff alleged that the IEP "was not reasonably calculated to confer educational benefit upon [the student]." (Pl.'s Response to Def.'s 56.1 Stmt. ¶ 36), that the IEP was inappropriate, that it did not comport with professional recommendations, and that an appropriate program was not recommended in a timely period. (Pl.'s 56.1 Stmt. ¶ 32.) Plaintiff requested, *inter alia*, that the IHO find that the CSE failed to offer M.K. a FAPE; that the CSE failed to offer an appropriate program; that the parents selected an appropriate program; and that they are entitled to reimbursement. (Pl.'s 56.1 Stmt. ¶ 33.) Plaintiff put forth testimony that the Rebecca School's classroom staff appropriately meets M.K.'s behavioral and educational needs through its DIR Floortime methodology. (Pl.'s 56.1 Stmt. ¶ 34.) According to the defendant, PS176X had the resources to implement the IEP goals and that the DIR Floortime methodology was not a necessary method. (Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Further Support of Defendant's Motion for Summary Judgment at 4). Defendant also notes that the Complaint did not reference problems with the FBA or the BIP, or acknowledge the proposed placement at P176X or demonstrate that it could not accommodate M.K.'s IEP due to its methodology. (Def.'s 56.1 Stmt. ¶ 36; Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Further Support of Defendant's Motion for Summary Judgment at 16.) An impartial hearing was held over three dates from November 28, 2011 through January 19, 201[2]. (Def.'s 56.1 Stmt. ¶ 37; Pl.'s 56.1 Stmt. ¶ 6.)

### D.   The Impartial Hearing Officer's Decision

On February 28, 2012, the IHO found that: (i) the DOE had failed to provide M.K. with a FAPE; (ii) the Rebecca School was an appropriate placement; and (iii) equitable considerations support an award of tuition to Plaintiff (IHO Officer's Findings of Fact and Decision at 16).  Specifically, the DOE failed to provide M.K. a FAPE because (i) the DOE school used a different teaching methodology than the Rebecca School, and the goals in the IEP were intended for the Rebecca School methodology, (ii) the CSE did not conduct a formal FBA, (iii) the BIP in the IEP was inadequate, and (iv) there was not an available seat in the DOE school.  (Def.'s 56.1 Stmt. ¶ 39; Pl.'s 56.1 Stmt. ¶ 36.)  On April 3, 2012, the DOE appealed to the New York State Education Department's Office of State Review.  (Def.'s 56.1 Stmt. ¶¶ 40-41; Pl.'s 56.1 Stmt. ¶ 8.)

### E.   The State Review Officer's Decision

The SRO overturned the IHO's finding and concluded that the DOE offered the Student a FAPE (SRO Decision at 18).  The SRO noted that in determining that Defendant failed to offer the Student a FAPE, the IHO addressed issues that were not raised in Plaintiff's due process complaint.  (*Id.* at 7). The SRO further found that "the February 2011 CSE had sufficient information relative to the student's present levels of academic achievement and functional performance at the time of the CSE meeting to develop an IEP that accurately reflected the student's special education needs."  (*Id.* at 14).  The SRO also concluded that the IEP was reasonably calculated to enable the student to receive educational benefits.  (*Id.* at 18).  Having decided that Defendant offered the Student a FAPE, the SRO did not consider whether the Rebecca School was an appropriate placement for M.K., or determine that the Plaintiff should be reimbursed.  (*Id.* at 18).

## II.    LEGAL STANDARD

This Court must determine whether the SRO's decision is supported by "'the preponderance of the evidence,' taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties." *Grim v. Rhinebeck Cent. Sch. Dist.,* 346 F.3d 377, 380 (2d Cir.2003); *see also M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of Yonkers,* 231 F.3d 96, 102 (2d Cir.2000), *abrogated on other grounds by Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 57–58, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). The IDEA's statutory scheme "requires substantial deference to state administrative bodies on matters of educational policy." *Cerra v. Pawling Cent. Sch. Dist.,* 427 F.3d 186, 191 (2d Cir.2005) (citing *Rowley,* 458 U.S. at 205–08, 102 S.Ct. 3034). This Court "must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E. v. New York City Dep't of Educ.,* 694 F. 3d 167, 189 (2d Cir. 2012); *see also Newington,* 546 F.3d at 118 ("'Deference is particularly appropriate when the state hearing officers' review has been thorough and careful.' " (quoting *Walczak,* 142 F.3d at 129) (internal ellipse omitted)). Furthermore, a court must defer to the SRO's determination even when the SRO's decision conflicts with the IHO's earlier decision because the SRO's decision "is the final decision of the state's authorities." *See M.C. v. Board of Educ. of Chappaqua Cent. Sch. Dist.,* 553 F. 3d 165, 171 (2d Cir. 2009). The party appealing an SRO's determination bears the burden of proof in establishing that the SRO's decision is not entitled to deference. *See M.H.,* 685 F.3d at 255 n.3.

## III.    THE SRO'S DETERMINATION IS ENTITLED TO DEFERENCE

Plaintiff has not established that the SRO's determination is not entitled to deference. After an exhaustive review of the administrative record, the SRO determined that the CSE formulated an appropriate IEP for the Student. Coupled with the public school placement offered to him, it conformed

to the procedural requirements of the IDEA, and was reasonably calculated to enable the Student to receive educational benefits and provided the Student a FAPE. The record shows that the SRO's decision was thorough and well-reasoned, and included a review of the Student's performance levels, the underlying data used at the February 14, 2011 CSE meeting, and the ways that the CSE addressed the Student's needs. (Pl. Ex. G; DOE Ex. 2; Pl. Ex. F; DOE Ex. 6; DOE Ex. 4; SRO Decl. at 13, 14). The SRO then considered whether the Student was denied a FAPE either because the CSE convened in February instead of later in the school year, or because the Student met only nine of the forty short-term objectives in the February IEP. The SRO concluded that the student was not denied a FAPE, after a review of the remaining goals and short-term objectives formulated to address the student's needs. (SRO Decl. at 17).

Plaintiff argues that the SRO's decision was flawed because the SRO failed to address (i) the lack of a FBA; (ii) the accuracy or adequacy of the BIP; (iii) the methodology used to implement the IEP goals; and (iv) whether the proposed classroom had a placement spot for the Student.

However, the record shows that the SRO did address each of these issues. First, the SRO found that an informal FBA of the Student was done prior to the formulation of the BIP. Second, the SRO determined that the IHO improperly reached the question of whether the BIP was adequate because that issue had not been raised in the DPC or put at issue during the impartial hearing. (SRO Decision at 7). Third, the SRO described the Student's behavioral challenges and how the IEP addressed those issues. (SRO Decision at 14). Finally, the SRO addressed whether DOE's proposed placement had a seat available for the Student, stating that "with respect to the IHO's finding that there was no seat available for the student in the assigned school ... I note that ... the IDEA does not require districts to maintain classroom openings for students enrolled in private schools." (SRO Decl. at 7 n.7).

## IV.    DEFENDANT PROVIDED THE STUDENT WITH FREE APPROPRIATE PUBLIC EDUCATION

Under the *Burlington/Carter* test, a board of education is required to pay for the program selected by a parent only if: (1) the educational program recommended by the board of education was inadequate or inappropriate; (2) the program selected by the parent was appropriate, such that the private program meets the student's special education needs; and (3) the equities support the parent's claim. *Florence Cnty. Sch. Dist. Four v. Carter,* 510 U.S. 7 (1993); *Sch. Comm. of Town of Burlington v. Dep't of Educ.,* 471 U.S. 359 (1985). Plaintiff can establish that the DOE's plan was inadequate or inappropriate—and thus did not afford the Student a FAPE—by establishing either (1) that the state did not comply with the procedural requirements of IDEA; or (2) that the challenged IEP was not "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206-207; *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). Only if Plaintiff proves that the IEP confers no educational benefit will this Court need to consider the other *Burlington* factors. *M.C. v. Voluntown Bd. Of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000).

### A.    DOE Complied with the Procedural Requirements of the Act

Under the IDEA, a denial of a FAPE occurs only when procedural inadequacies (i) impede the student's right to a FAPE, (ii) significantly impede the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (iii) cause a deprivation of educational benefits. 20 U.S.C. § 1415(F)(3)(e)(ii). Thus, to constitute a denial of a FAPE, procedural inadequacies must "individually or cumulatively result in the loss of educational opportunity or seriously infringe on a parent's participation in the creation or formulation of the IEP." *W.S. ex rel. C.S. v. Rye City Sch. Dist.*, 454 F. Supp. 2d 134, 138 (S.D.N.Y. 2006). Here, the record reflects that DOE developed an IEP that was reasonably calculated to confer an educational benefit, while complying with the statute's procedural safeguards.

8


Plaintiff alleges that the DOE failed to comply with the procedural requirements of the Act in various ways, including: (i) the CSE's failure to conduct an FBA; (ii) inaccurate descriptions of the Student's behaviors in the BIP; (iii) the use of a December 2010 report to prepare goals that were to be used for the school year beginning in July 2011; (iv) the IEP's adoption of goals from the Rebecca School progress report, which were written for a specific methodology that the IEP and the proposed placement were not going to implement; (v) the classroom paraprofessional's lack of training to implement the Student's IEP goals; and (vi) the CSE's change of the Student's related services "without any reason." (Compl. ¶ 25). The record does not establish that any of these deviations impeded the Student's right to a FAPE, significantly impeded Plaintiff's opportunity to participate in the decision-making process, or deprived the Student of educational benefits.

First, the informal FBA did not violate the procedural requirements of the Act. The CSE's reliance on classroom observation of the Student by a DOE psychologist, the input of his classroom teacher about the nature and cause of his disruptive behaviors and information from Plaintiff is consistent with the requirements of New York regulations governing FBAs. *See* 8 NYCRR § 200.22 ("The FBA shall, as appropriate, be based on multiple sources of data including, but not limited to, information obtained from direct observation of the student, information from the student, the student's teacher(s) and/or related service provider(s), a review of available data and information from the student's record and other sources including any relevant information provided by the student's parent. The FBA shall not be based solely on the student's history of presenting problem behaviors.")

Second, because Plaintiff failed to raise the adequacy of the BIP in the DPC, the issue was not properly before the IHO and thus is not properly before this Court. Furthermore, the record shows that the BIP described the Student's interfering behaviors as they were known and understood at the time of the IEP meeting.

9

Furthermore, the use of a December 2010 progress report from the Rebecca School, where the Student was enrolled, and observed daily, at the time of the CSE meeting was not unreasonable and did not violate the procedural requirements of the Act.

Similarly, the adoption of the Rebecca School floortime methodology in the IEP did not violate the procedural requirements of the Act. After reviewing the development and content of the February 14, 2011 IEP, the SRO determined that it was reasonably calculated to confer a substantial education benefit on the Student, and was thus an appropriate IEP. (SRO Decision at 17). Because the DOE's recommended program, as a whole, was appropriate and fulfilled the requirements of the Act, the Student was not denied a FAPE. *See W.S. v. Rye City Sch. Dist.*, 454 F. Supp. 2d 134, 146-47 (S.D.N.Y. 2006) (upholding adequacy of IEP as a whole, despite goal statements being overly broad). Furthermore, Plaintiff's participation in the development and modification of the goals to be placed on the IEP (SRO Dec. at 17; see Tr.41, 55-57, 68-72; DOE Ex. 6) belies any argument that Plaintiff was denied an opportunity to participate in the decision-making process regarding the provision of a FAPE to the Student. Finally, if Plaintiff later determined that the February 14, 2011 IEP was no longer adequate to meet the Student's needs by July 2011, she should have sought a remedy within the IDEA instead of unilaterally placing the student in private school.

Moreover, Plaintiff's argument that the classroom paraprofessional lacked training to implement the Student's IEP goals is contradicted by the evidence on the record that the Student's IEP could have been implemented at P176X. Specifically, a DOE teacher at P176X, who would have been the Student's teacher had he enrolled there, testified about how she would have implemented the goals outlined in the IEP. (Tr. 96-107; 111-14).

Plaintiff's argument that the IEP was defective due to the change of the Student's related services "without any reason" is also without merit. (Compl. ¶ 25). Plaintiff argues that there was no

reason for the new IEP's addition of a fifth occupational therapy session per week, or for the

modification of the Student's speech therapy, which requires that the fourth weekly session is in a group

of two, whereas it had been in a larger group at the Rebecca School.  (Pl.'s Memorandum of Law in

Support of Cross-Motion for Summary Judgment at 21-22).   These alterations in the IEP do not

constitute a denial of a FAPE, as the IEP would continue to provide the student with "related services"

on a more frequent basis, and it was "reasonably calculated" based on the documentation and evaluation

procedure utilized in the CSE meeting. 20 U.S.C. § 1401(9); Rowley, 458 U.S. at 207.  Furthermore, as

required by IDEA § 300.501, Plaintiff was provided a meaningful opportunity to participate in the

development of the IEP.  In fact, both Plaintiff and Rebecca School Staff participated in the CSE

meeting where the aforementioned service plan modifications were developed based on the performance

of the student, the July 2009 neuropsychological consultation report, a November 2010 classroom

observation, and a December 2010 Rebecca School interdisciplinary report of progress.  (Defendant's

Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 10).  The SRO found

that this was an adequate  amount of evaluative information to develop the new IEP.  *Id.*

### B.    The February IEP was Substantially Adequate

"Because administrative agencies have special expertise in making judgments concerning student

progress, deference is particularly important when assessing an IEP's substantive adequacy." *Id.*

(quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F. 3d 186, 195 (2d Cir. 2005)).  The requirement that the

IEP be "reasonably calculated" to provide educational benefits simply means that it must "provide

[children with disabilities] with 'meaningful access' to education and must be 'likely to produce

progress and not regression.'" *Frank G. v. Bd of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006).

The SRO correctly determined that the February 2011 IEP was substantially adequate.

Plaintiff's arguments that the plan was inadequate are without merit.   In sum, the plan adequately

11

addressed the behaviors exhibited by the Student as of February 2011. Specifically, the minutes from the February 14, 2011 CSE meeting indicate that the issue of whether the Student bites was discussed, and according to the Student's then-current teacher, the Student was "not biting anymore," and that the Student's "aggressive behavior" had "decreased." (DOE Ex. 6). The implementation of a February IEP in July would not have rendered the plan inadequate. This Court defers to the SRO's determination, which is supported by the record, that "the remaining [31] goals and short term objectives in the February 14, 2011 IEP were sufficient to address the Student's demonstrated needs and were designed to enable him to make progress." (SRO Decision at 16).

Plaintiff's argument that the Student was denied a FAPE because the classroom did not have a space for him is similarly without merit. Plaintiff declined the DOE's offered placement prior to the start of the school year. The school was not obligated to hold the placement open after Plaintiff did so. Furthermore, the evidence in the record shows that a seat was available for the Student at the time Plaintiff filed the DPC.

Moreover, the use of the Rebecca School goals to write the IEP did not violate the Act. Finally, Plaintiff's arguments that the Applied Behavior Analysis model used in the classroom was not appropriate for the student, the children in that classroom were functionally very different from him, and there was no quiet room in the school where he was assigned are all without merit. These arguments are speculative because the Student never attended the DOE's offered placement. Moreover, the evidence on the record, including testimony by the DOE teacher that would have been the Student's teacher, that the Student would have been appropriately grouped in her class belies this argument. (Tr. 98, 101, 124).

The SRO correctly determined that the education plan offered by Defendant was adequate and appropriate. Because the program was adequate and appropriate, the second and third prong of the *Burlington/Carter* test need not be addressed.

SPA-13

**CONCLUSION**

Defendant's motion for summary judgment that the Plaintiff is not entitled to reimbursement of private school tuition costs for the student is GRANTED. Plaintiff's cross-motion for summary judgment awarding reimbursement is DENIED.

Dated: March 21, 2014
New York, New York

SO ORDERED.

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/25/2014

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
E.H., individually and on behalf of M.K.,
                              Plaintiff,

        -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,
                              Defendant.
------------------------------------------------------------X

12 **CIVIL** 6639 (GBD)

**JUDGMENT**

Defendant having moved for summary judgment that Plaintiff is not entitled to reimbursement of private school tuition costs for the student (ECF 12), Plaintiff having cross-moved for summary judgment awarding reimbursement (ECF 17), and the matter having come before the Honorable George B. Daniels, United States District Judge, and the Court, on march 21, 2014, having rendered its Memorandum Decision and Order granting defendant's motion for summary judgment that the Plaintiff is not entitled to reimbursement of private school tuition cost for student, denying Plaintiff's cross-motion for summary judgment awarding reimbursement, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Decision and Order dated March 21, 2014, Defendant's motion for summary judgment that the Plaintiff is not entitled to reimbursement of private school tuition costs for student is granted and Plaintiff's cross-motion for summary judgment awarding reimbursement is denied.

**Dated:** New York, New York
        March 25, 2014

**RUBY J. KRAJICK**
Clerk of Court

BY: _____
        **Deputy Clerk**

**THIS DOCUMENT WAS ENTERED**
**ON THE DOCKET ON** _____